HENRY BROMSCHWIG TAILORS' TRIMMING COMPANY, Respondent, v. MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, May 7, 1912.**

1. **JUSTICES' COURTS: Pleading: Requisites of Complaint.** Formal pleadings are not required in cases originating in a justice's court, and a complaint which sets forth the facts essential to advise the defendant of the nature and character of the claims and which is sufficiently definite to bar another action on it is sufficient.

2. **COMMON CARRIERS: Action for Goods Lost: Justices' Courts: Pleading: Complaint Construed.** In an action against a common carrier, brought in a justice's court, the complaint alleged that defendant undertook the transportation of plaintiff's goods for a consideration, and, in violation of its agreement and in total disregard of its duty as a common carrier, "failed and neglected to deliver said property at its destination," and that the same had been wholly lost to plaintiff. *Held,* that the complaint charged a breach of the carrier's obligation as an insurer; the word "neglected" being employed with respect to the charge that defendant failed to deliver the goods, and not with respect to negligent conduct.

3. ————: **Carriage of Goods: Liability of Carrier for Loss.** A common carrier of goods is an insurer and is liable for a loss

of the goods or a failure to deliver them, regardless of the cause, except for the act of God or the public enemy, and except where the loss accrues alone through the neglect of the owner, or they perish from an inherent vice therein, without fault on the part of the carrier.

4. ———: ———: ———: **Who May Maintain Action: Parties.** An action for the loss of goods in transit may be maintained against a carrier, either by the shipper or the consignee.

5. **APPELLATE PRACTICE: Review: Errors in Favor of Appellant.** The appellant will not be heard to complain in the appellate court of an error in his favor made by the trial court.

6. ———: **Conclusiveness of Finding of Facts.** Where the defendant, in an action tried to the court without a jury, requests a special finding of facts, the findings made are conclusive, on appeal, in case all the evidence is not incorporated in the bill of exceptions.

7. **COMMON CARRIERS: Action for Loss of Goods: Defenses: Burden of proof.** In an action against a common carrier for failure to deliver at destination a shipment of goods entrusted to it, defenses that, by virtue of a special contract, defendant was liable only until the goods were delivered to a connecting carrier, and that neither defendant nor the connecting carrier was liable for loss of the goods by fire, and that they were destroyed by fire after being delivered to the connecting carrier and while in its care, were affirmative defenses, the burden of establishing which rested on defendant.

8. **APPELLATE PRACTICE: Failure to Bring Up All the Evidence: Presumptions.** Where defendant, on appeal from a judgment against him, fails to incorporate all the evidence in the bill of exceptions, the law conclusively presumes that his evidence tending to establish an affirmative defense was contradicted and overthrown.

9. **COMMON CARRIERS: Action for Loss of Goods: Defenses: Delivery to Connecting Carrier: Sufficiency of Evidence.** In an action against a common carrier for failure to deliver at destination a shipment of goods entrusted to it at St. Louis on December 9, evidence by the agent of a connecting carrier, that he received a box of goods which had been shipped from St. Louis on December 11, consigned to the same person that plaintiff's shipment was consigned to, but stating that his record did not show the name of the consignor, was not sufficient to identify the goods received as those shipped by plaintiff, so as to establish a defense that the defendant was not liable, under a special contract, by reason of having delivered the goods to the connecting carrier.

10. ――――: ――――: ――――. ――――: ――――.   In an action against
a common carrier for loss of goods shipped under a bill of lad-
ing limiting the carrier's liability to its own line and relieving
it from liability for loss by fire, evidence *held* insufficient to im-
peach a finding that there was no evidence to show a delivery
by defendant to its connecting carrier or that the goods were
destroyed by fire.

Appeal from St. Louis City Circuit Court.—*Hon. W.
B. Homer,* Judge.

AFFIRMED.

*E. D. Andrews* and *Lee W. Hagerman* for appel-
lant.

(1) Although the petition was filed in a justice
court, yet a formal petition was drawn. And, having
pleaded formally, the plaintiff should be held to his
pleadings. But, even if the court declines to apply the
same rules to the petition in this case which it would
apply to a petition filed in a court of record, yet, nev-
ertheless, even though treated as informal, the distinc-
tion between tort and contract is maintained in the
justice court practice. Wernick v. Railroad, 131 Mo.
App. 37; R. S. 1909, secs. 7411, 7412; Redmond v. Rail-
road, 90 Mo. App. 68. (2) The petition sounds in tort
for negligent loss by defendant of plaintiff's box of
merchandise. Wernick v. Railroad, 131 Mo. App. 37;
Grain Co. v. Railroad, 148 Mo. App. 308, 128 S. W.
42; Heil v. Railroad, 16 Mo. App. 363. (3) The case
having been tried on the theory that recovery was justi-
fied on the ground of defendant's negligence, the plain-
tiff was not entitled to recover on any other theory, and
certainly not on the theory of contract. Wernick v.
Railroad, 131 Mo. App. 37; Whiting v. Railroad, 101
Mo. 631. (4) Having charged negligence against de-
fendant, the burden is on plaintiff to prove negligence,
and, failing to prove negligence, the plaintiff cannot
recover. Otich v. Railroad, 154 Mo. App. 420; Decker

v. Railroad, 149 Mo. App. 534, 131 S. W. 118; Clark
v. Railroad, 138 Mo. App. 424; Eckton v. Railroad, 125
Mo. App. 224; Ridgeway v. Railroad, 161 Mo. App.
260; Whiting v. Railroad, 101 Mo. 631. (5) The mere
proof of the fact with respect to which negligence is
charged, is not sufficient to establish negligence. Galm
v. Railroad, 87 S. W. 1015. (6) Consequently, the
proof that the shipment was lost is not sufficient of
itself to establish that it was negligently lost. Norton
v. Ex. Co., 123 Mo. App. 233; Whiting v. Railroad, 101
Mo. 631. (7) Having so contracted, if the loss was
caused by fire, the plaintiff cannot recover against de-
fendant unless plaintiff can prove that the fire was due
to the defendant's negligence. Whiting v. Railroad,
101 Mo. 631; Cau v. Railroad, 194 U. S. 428. The plain-
tiff has proved no negligence on defendant's part either
in reference to fire or any other form of loss. (8)
When a special contract of exemption is pleaded by
defendant, and defendant has proved prima facie that
it is within the exemptions, the burden shifts to the
plaintiff to prove negligence with reference to the acts
for which exemption is stipulated. Whiting v. Rail-
road, 101 Mo. 631, 28 Mo. App. 103; Farnham v. Per-
kins, 55 Pa. St. 53; Ex. Co. v. Perkins, 42 Ill. 461.

*James E. Reese* for respondent.

(1) The only purpose of a petition filed in a case
before a justice of the peace is to apprise the court of
the facts. It matters not what the complainant may
call his statement if the whole states facts which con-
stitute a cause of action and is sufficient to bar another
suit after judgment. Sepetowsky v. Transfer Co., 104
Mo. App. 110. (2) Negligence was prima facie shown
when delivery to the defendant was shown and that the
goods were lost. The obligation of a common carrier
with respect to the subject-matter of the transporta-
tion is that of an insurer, and it is liable for loss of

165 Mo. App.—23

the property regardless of the cause, save only the act of God and the public enemy. Merritt v. Railroad, 128 Mo. App. 420; Mosley v. Railroad, 132 Mo. 647; Creel v. Railroad, 137 Mo. 31.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the loss of a small parcel of goods shipped by it over defendant's railroad. Plaintiff recovered and defendant prosecutes the appeal.

The suit originated in the justice court. It is argued the judgment should be reversed for the reason the complaint counts on a negligent, breach of duty with respect to the carriage of the goods and there is naught in the record to suggest 'such negligence. Obviously this argument is without force, for though no negligence was shown at the trial, none is charged in the complaint and the judgment may be sustained as for a breach of the obligation of insurer which the common law annexes to defendant's calling as a common carrier of goods. It is a breach of this obligation the complaint sets forth.

Formal pleadings are not required in a case originating before the justice, and the complaint is always upheld if it sets forth the facts essential to advise the adverse party of the nature and character of the claim he is called upon to meet and is sufficiently definite to bar another action for the same subject-matter. [Sepetowski v. St. Louis Transit Co., 102 Mo. App. 110, 76 S. W. 693; Hall v. Railroad Co., 124 Mo. App. 661, 101 S. W. 1137; Polhans v. Railroad Co., 115 Mo. 535, 22 S. W. 478.] The complaint lodged before the justice here is amply sufficient. Indeed, it contains an unusually full statement of facts touching the shipment of goods and, as we understand it, avers a breach of the obligation of insurer which pertains to defendant's calling. After averring the shipment of the goods and describing them and setting forth that defendant undertook their transportation and delivery at Fort Worth,

Texas, for a consideration, the complaint then avers the breach as follows: "But plaintiff says that defendant, in violation of its said agreement and in total disregard of its duty as a common carrier aforesaid, failed and neglected to deliver said property at its destination to plaintiff or to any one for it, or to the said H. Peterson, or to any one for him, and that the same has been wholly lost to plaintiff and to said H. Peterson." Though the word "neglected" is employed with respect to defendant's failure to deliver the goods, it appears from the context that it relates rather to the breach of defendant's obligation as insurer than to negligent conduct on the part of defendant, touching the manner in which it handled the goods. No one can doubt that the law annexes the obligation of an insurer to the office of the common carrier with respect to the goods received by it for transportation and that such carrier is liable thereon for the loss of the goods or failure to deliver them, regardless of the cause, except for the act of God and the public enemy, unless it be that the loss accrue alone through the neglect of the owner of the goods or they perish from an inherent vice therein, without fault on the part of the carrier. [See Merritt Creamery Co. v. Atchison, T. & S. F. R. Co., 128 Mo. App. 420, 107 S. W. 462; Moseley v. Mo. Pac. R. Co., 132 Mo. App. 642, 112 S. W. 1010; Creel v. Mo. Pac. R. Co., 137 Mo. App. 27, 119 S. W. 30; 6 Am. & Eng. Ency. Law (2 Ed.), pp. 264, 265, 266.] It may be that defendant neglected to deliver the goods and the loss accrued to plaintiff through such omission, but though such be true, plaintiff may recover as for a breach of defendant's duty of insurer without proving any particular negligent act. It is the duty of the carrier to safely transport the goods and deliver them at destination for the consignee, or, at least, to the connecting carrier. Upon a failure appearing with respect to this matter, the obligation of insurer is breached if the goods are lost, and a recovery may be

had therefor even though the failure to deliver and consequent loss were negligent. It is the same, too, if the loss result from a willful or intentional act, for under such a charge, the law is concerned only with enforcing compensation for the breach of the obligation it annexes to the calling and not with the particular mode or manner pursued by the carrier to occasion the loss.

The shipment of goods involved was consigned by plaintiff at St. Louis to H. Peterson at Fort Worth, Texas, over the line of defendant's railroad as the initial carrier, on December 9, 1907. The goods were never delivered to Peterson, and from some cause not appearing in the record, seem to have been lost in transit on defendant's road; for the court found they were not delivered to the connecting carrier. Peterson, the consignee, assigned his claim therefor to plaintiff, the consignor, but this is unimportant as either party might have maintained the suit without such assignment. [Gratiot Street Warehouse Co. v. Missouri, K. & T. R. R. Co., 124 Mo. App. 545, 102 S. W. 11.]

By its answer, defendant pleaded the terms of the bill of lading, which was given in evidence, to the effect that it assumed to deliver the goods only to a connecting carrier and was not responsible for loss thereafter. The answer pleads, too, that the shipment was made in consideration of a reduced rate of freight and under defendant's bill of lading stating such to be the fact. For this consideration, it is averred the parties agreed, and the bill of lading so reads, that in event of loss by fire no responsibility therefor should be entailed upon defendant or another connecting carrier.

The case was tried before the court without a jury and defendant requested a special finding of facts under the statute. In compliance with this request, the court made the following finding of facts:

"At the request of defendant the court makes the following finding of facts:

"Plaintiff is a corporation duly incorporated under the laws of the state of Missouri, and defendant is a corporation duly incorporated under the laws of the state of Kansas, and is engaged in operating a line of railway in the states of Missouri, Kansas and Oklahoma. The Missouri, Kansas & Texas Railway Company of Texas is a corporation duly incorporated under the laws of Texas, and connects with the defendant corporation at the line of the states of Oklahoma and Texas at Red River.

"On the 9th day of December, 1907, plaintiff delivered to defendant corporation for shipment from St. Louis to Fort Worth, Texas, the following merchandise:

"10 doz. Climax Cotton, 1 doz. Rps. B. L. Needles, 1 pc. No. 800 Wigan, 90, 2 pcs. Empire Duck, 130 yds., 1 pc. 10A Hair Cloth, 25 yds., 2 pcs. Victor Silesia, 116 yds., 1 pc. Ashton Pocketing, 59 yds., 2 pcs. Warp Sateens, 122.3 yds., 1 pc. Scotch Cambric, 64 yds., 4 doz. Wadding, 3 doz. Coat Hangers, 3 doz. Pants Hangers.

"Defendant corporation issued to plaintiff for said merchandise a through bill-lading from St. Louis to Fort Worth, Texas, which bill-lading is set out in full opposite page 26.

"The goods were consigned as stated in said bill-lading to H. Peterson, Fort Worth, Texas. The tariff rate of freight from St. Louis to Fort Worth, Texas, under the bill-lading was $1.37 per 100 pounds. This was the tariff rate for goods shipped under bill-lading above referred to. The defendant company issued a different bill-lading, the form of which is the same as the one offered in evidence with the exception that it does not have the initials on it of 'O. R.,' which means owner's risk. Where this second bill-lading is issued the freight rate is twenty per cent higher. The defendant posted in its local freight office its schedule of freight rates.

"There is no substantial or competent evidence showing what was done with the goods delivered by the plaintiff to defendant after the same were so delivered. There is no proof that they were delivered to the Missouri, Kansas & Texas Railway Company of Texas. The consignee, H. Peterson, has never received those goods. Neither have they been returned to the consignor. The consignee assigned to plaintiff its claim against defendant for loss of said goods. The value of said goods as billed by plaintiff to Peterson was $143.43. The cost or market value of said goods in the city of St. Louis was 27 1-2 per cent less than that amount, or the sum of $104."

On this finding of facts, the court gave judgment for plaintiff for $104, as the value of the goods at St. Louis, but of this defendant, who alone appeals, cannot complain, for their value at Fort Worth, the point of destination, was $143.43. It is argued this finding for plaintiff is wholly unsupported by the evidence, for the reason it appears the goods were delivered by defendant to the Missouri, Kansas & Texas Railway Company of Texas, at Red River, its connecting point, and were subsequently destroyed by fire in the freight house of the latter company at Fort Worth. What the evidence for plaintiff touching this matter is, we are unadvised, for it is not incorporated in the bill of exceptions. This being true, of course, the special finding of facts made under the statute by the trial judge is conclusive here. [Furstenfeld v. Furstenfeld, 152 Mo. App. 726, 131 S. W. 359.] No one can doubt that if plaintiff shipped the goods over defendant's road and they were wholly lost by any other means than fire, for which cause it is said liability is excepted by the bill of lading, and that the goods were never delivered to the connecting carrier, then defendant is liable for their value, under its obligation of insurer. Such is the effect of the judgment here under review, for the court found as a fact that "there is no proof that they

were delivered to the Missouri, Kansas & Texas Railway Company of Texas.'' This finding implies, too, that there was no evidence tending to prove that the goods were destroyed by fire in the freight house of the connecting carrier at Fort Worth as alleged by defendant. Indeed, the court finds that there is no evidence to show what was done with the goods after the same were delivered to defendant by plaintiff in St. Louis except that they were lost. No one can doubt that the two defenses set forth in the answer—the first to the effect that under the special conract evinced by the bill of lading defendant was liable only until the goods were delivered to the connecting carrier and that neither it nor the connecting carrier was liable for the loss of the goods by fire—were affirmative defenses, with respect to the establishment of which, the law devolved the burden of proof on defendant. [See Witting v. St. Louis, etc. R. Co., 101 Mo. 631, 14 S. W. 743.] Touching both of these defenses, the court found that there was no evidence the goods were ever delivered by defendant to the connecting carrier and, furthermore, that there was no evidence as to what became of them except they were lost, and in the state of the record before us it would seem this alone concludes the controversy.

But it is argued by defendant the court erred in its finding of facts, for it is said McCarty, the freight agent of the connecting carrier, Missouri, Kansas & Texas Railway Company of Texas, at Fort Worth, testified the goods were destroyed by fire in the freight house of that company at Fort Worth. From defendant's omission to incorporate all of the evidence in the bill of exceptions, the law conclusively presumes the defendant's evidence was contradicted and overthrown. However, we have read the testimony of this witness several times and have been unable to discover a word therein to the effect suggested. This witnss said, ''I have record of a box of dry goods from St. Louis, Mis-

souri, billed out of there December 11, 1907, consigned to H. Peterson, Fort Worth, Texas. My record does not show the name of consignor." This is all there is of the witness' testimony with respect to a shipment of goods to H. Peterson at Fort Worth, Texas, and obviously it is insufficient to identify the subject of the controversy here. The goods shipped by this plaintiff to H. Peterson at Fort Worth were consigned at St. Louis of date December 9th, as appears from the bill of lading itself and all the evidence in the record. The shipment referred to by the witness in the quotation above, was made on December 11, 1907, and the witness pointedly says that he has no knowledge of the consignor. The mere fact that a package of goods addressed to H. Peterson, Fort Worth, Texas, which was shipped from St. Louis on December 11 by some one not known is not in and of itself sufficient to identify this shipment as the same one which was made by plaintiff from St. Louis to H. Peterson two days theretofore, or December 9th.

As to defendant's second defense, pertaining to the loss of the goods by fire, there is not a word in the record concerning the same. It is true the evidence reveals that the freight house of the connecting carrier at Fort Worth was destroyed by fire on January 7, 1908, but the shipment of goods, of which the freight agent spoke, addressed to Peterson reached Fort Worth, according to his testimony, on December 15th or 16th before. No witness says that these goods were destroyed by fire, and we have searched the record in vain to find a suggestion to that effect. McCarty, the freight agent at Fort Worth, Texas, testifies positively that he has no knowledge as to what became of the shipment of goods which he said left St. Louis December 11th and was consigned to Peterson. As to any shipment made by plaintiff to Peterson on December 9th, he was wholly without knowledge. Touching the parcel of goods about which he testified, the following ques-

tions and answers appear: "State what finally became of the shipment of goods in question? A. I do not know. . . . Q. Why was the box of goods in question never delivered to the consignee? A. I do not know." While this witness was the only one who spoke on the subject at all, he does not even suggest that the shipment of goods involved here is the one about which he testified, nor that any other goods, for that matter, were destroyed by fire. Though the witness said the freight house was destroyed by fire January 7, 1908 he does not say that any goods were contained therein at the time, and it may be they were all saved, if there were any in storage. Another question and answer from his testimony are as follows: "Q. State what disposition was made of this shipment of dry goods, when unloaded at your station? A. I am unable to state, owing to the destruction of the greater part of the records by fire." Instead of the finding of facts being contrary to the uncontradicted evidence of defendant, touching its two affirmative defenses, the testimony of the witness relied upon to support them is wholly insufficient for the purpose and was, therefore, properly rejected by the trial court. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.